# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ROBERT M. ROMERO, ) | |
| ) | |
| Defendant. ) | No. 14 C 07643 |
| _____ | |
| | Judge John J. Tharp, Jr. |
| ROBERT M. ROMERO, ) | |
| ) | |
| Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CONTINENTAL SERVICE GROUP, ) | |
| INC., ) | |
| ) | |
| Third Party Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Third-party plaintiff Robert Romero brings suit against Continental Service Group, Inc. ("ConServ"), alleging that ConServ breached an implied warranty of authority when it purported to act on behalf of the United States and entered into an agreement with Romero for the repayment of his federally-backed student loans. Romero also alleges that ConServ is liable to him under the theory of promissory estoppel because of this agreement. ConServ moved to dismiss the third party complaint, and Magistrate Judge Martin recommended that this Court grant the motion on the basis of non-compliance with the statute of limitations. This Court disagrees with the recommendation, concluding that it is not clear on the face of the Third Party Complaint that Romero knew of his injury within the five-year statute of limitations. The Court further concludes that, on the merits, the third party complaint states a plausible claim for relief.

## BACKGROUND

The United States filed suit against Romero on September 30, 2014 for the collection of unpaid, federally-funded student loans. First Am. Compl. ECF No. 16. In response, Romero alleged that the debt had been settled through ConServ in January 2006. Answer to Am. Compl. 4, ¶ 1, ECF No. 20. Romero alleged that in January 2006 ConServ called him, represented that it was acting on behalf of the United States Government, and offered to settle the remaining balance of the student loans (which was at that time $103,841.64). Countercl. ¶¶ 3-5, ECF No. 20. Romero alleged that he agreed with ConServ to pay a total of approximately $10,000 to settle the debt: approximately $4,808.70 by credit card to ConServ over the phone that day, and $5,191.30 by mailing a check to the U.S. Department of Education. *Id*. ¶ 6. After making the required payment by credit card, *id.*, Romero received a written offer from ConServ to settle his remaining debt for $5,191.30, Third Party Compl. Ex. A, ECF No. 50-1, Romero mailed a check for $5,191.30 to the U.S. Department of Education on January 26, 2006. TPC Ex. B-C, ECF Nos. 50-2, 50-3. In his Counterclaim against the United States, Romero alleged: "On February 1, 2006, United States of America retracted the settlement agreement it entered into with Robert M. Romero," and, "On February 2, 2006, United States of America returned the $5,191.30 check received from Robert M. Romero." Countercl. ¶¶ 10-11.

After the United States initiated this suit to collect the outstanding balance of Romero's loans, a consent judgment was entered on June 29, 2015, in favor of the United States for $109,104.73 plus costs (of which Romero was required to pay $100,000 by a date certain, after which the judgment was satisfied). J. Order, ECF No. 54.

On June 22, 2015, just before this consent judgment, Romero had filed a Third Party Complaint ("TPC") against ConServ, in essence seeking to hold Conserv liable for his debt to the United States, asserting theories of implied warranty of authority and promissory estoppel. TPC

¶¶ 14-34, ECF No. 50. Romero alleges that ConServ warranted to Romero through both the phone conversation and the written offer that ConServ had the authority to settle the unpaid student loan balance on behalf of the United States Government. *Id*. ¶¶ 16-17. Romero asserts that because he relied upon ConServ's warranty and did not make any further payments on the notes, he came to owe the Government over $104,000. *Id*. ¶ 21. Romero's promissory estoppel claim against ConServ is based on the same reliance theory. *Id*. ¶¶ 25-34.

ConServ filed a Motion to Dismiss the TPC alleging, among other things, that both of Romero's claims are time-barred. Mem. in Supp. of Mot. to Dismiss, 4-5, 8-9, ECF No. 68. ConServ contends that both the promissory estoppel and the breach of implied warranty of authority claims have five-year statutes of limitations, *Id*. 4, 9, and that Romero should reasonably have been aware of his alleged injury when the Government returned the check on February 2, 2006. *Id*. 5. Romero counters that he first knew about his alleged injury on September 20, 2014, when the United States filed its lawsuit against Romero, and that the statute of limitations should have begun to run on that date. Resp. in Opp'n to Mot. to Dismiss, 7, ECF No. 80. He denies knowledge that the United States returned the check in February 2006. *Id*. 8. Additionally, Romero argues that his claim for breach of implied warranty of authority is a contract claim with a ten-year statute of limitations, and therefore is not time-barred even if he was aware of his alleged injury in 2006. *Id*. 12.

In his Report and Recommendation,[1] Magistrate Judge Martin recommended that ConServ's Motion to Dismiss be granted on the grounds that both claims are time-barred. Report

---

[1] Magistrate Judge Martin had jurisdiction over the case between the United States and Romero because those parties consented. See Joint Consent, ECF No. 53. Conserv, however, never filed a notice of consent, and therefore Magistrate Judge Martin's jurisdiction did not extend to ruling on its dispositive motion. Nevertheless, Conserv presented the motion to Magistrate Judge Martin, and he prepared the report and recommendation called for by Fed. R.

& Recommendation 9, ECF No. 83. Judge Martin concluded that a five-year statute of limitations applies to Romero's breach of implied warranty of authority because ConServ's alleged liability does not derive from a contractual obligation, but from common law tort concepts. *Id*. 4. Judge Martin also found that Romero's statements in his Counterclaim were judicial admissions that are binding on Romero as to ConServ. *Id*. 6, 7. Based on those admissions—specifically, that the United States repudiated the agreement and returned the check—Judge Martin determined that Romero was aware of his injury on February 1, 2006, and his claims against ConServ are barred by the statute of limitations. *Id*. 9.

Romero filed timely objections to the Report and Recommendation, and Conserv responded. Objections, ECF No. 85; Resp, ECF No. 86.

## DISCUSSION

Because Conserv brought a dispositive pretrial motion, this Court reviews *de novo* the parts of the magistrate judge's recommended disposition as to which Romero made a timely objection. Fed. R. Civ. P. 72(b)(3). Romero objected to two aspects of Judge Martin's Report and Recommendation. First, he argues that Judge Martin erred when he determined that the breach of implied warranty of authority claim is subject to a five-year statute of limitations because the claim sounds in contract and such claims have a ten-year statute of limitations. Objection ¶¶ 1-2, ECF No. 85. Second, Romero contends that Judge Martin erred in binding Romero to the pleadings in his Counterclaim against the United States and finding that the statute of limitations began to run on February 1, 2006. *Id*. ¶ 3. Romero argues that his pleadings

---

Civ. P 72(b)(1) for findings and recommendations without consent. Neither party objected to the motion being addressed first by Magistrate Judge Martin although, absent the consent of all parties, it was outside the scope of the referral.

against ConServ assert no knowledge of his alleged injury until 2014, and that this creates an issue of fact that cannot be decided on a motion to dismiss. *Id*.

"When a defendant charges noncompliance with the statute of limitations, dismissal under Rule 12(b)(6) is irregular, for the statute of limitations is an affirmative defense." *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) (citing *United States v. N. Trust Co.,* 372 F.3d 886, 888 (7th Cir.2004)). "[A] motion to dismiss based on failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Id*. at 614 (citing *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir.2005)). In reviewing a motion to dismiss, a court must draw all favorable inferences for the non-moving party. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

For the reasons stated below, this Court agrees with Magistrate Judge Martin's conclusion that the applicable statute of limitations for both of Romero's theories of relief is five years, but nevertheless concludes that it cannot be determined on the pleadings alone *when* Romero knew or should have known that ConServ had injured him.

I. **Applicable Statute of Limitations**

"The determination of the applicable statute of limitations is governed by the type of injury at issue, irrespective of the pleader's designation of the nature of the action." *Armstrong v. Guigler*, 673 N.E.2d 290, 293 (Ill. 1996). S*ee also Travelers Cas. & Sur. Co. v. Bowman*, 893 N.E.2d 583, 588 (Ill. 2008) ("We reiterate that in determining the applicable statute of limitations, the focus of our inquiry is on the nature of the liability"). Even when alleged in connection with a written agreement, claims that are tortious in nature are subject to the appropriate statute of limitations for tort, not for contract. *Rozny v. Marnul*, 250 N.E.2d 656, 664 (Ill. 1969) (plaintiff's injury due to a land surveyor furnishing a faulty survey and unilaterally

promising its accuracy arose from "tortious misrepresentation," which sounds in tort and is therefore not subject to the ten-year statute of limitations for contracts). *See also Sabath v. Mansfield*, 377 N.E.2d 161, 168 (Ill. App. Ct. 1978) ("[a] suit for fraud committed in the breach of a written contract is governed by the five-year statute applicable to 'all other civil actions not otherwise provided for'").

Romero argues that the applicable statute of limitations for his breach of implied warranty of authority claim is ten years under 735 Ill. Comp. Stat. 5/13-206, which states that "actions on . . .written contracts, . . . shall be commenced within 10 years next after the cause of action accrued." This argument fails because the nature of Romero's alleged injury does not arise from ConServ violating the terms of a written contract between itself and Romero. Instead, the injury derives from ConServ allegedly misrepresenting that it had the authority to bind the government to an agreement with Romero for an amount certain. Consequently, the claim falls within "all other civil actions not otherwise provided for" under 735 Ill. Comp. Stat. 5/13-205, along with other similar torts of fraud, deceit, and tortious misrepresentation. *Rozny*, 250 N.E. 2d at 664. Therefore, Romero's claim is subject to the five-year statute of limitations.

## II. Accrual of Statute of Limitations

Under 735 Ill. Comp. Stat. 5/13-205, "[a]ccrual occurs—and the limitations period therefore begins to run—when the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *See Singletary v. Cont'l Illinois Nat. Bank & Trust Co. of Chicago*, 9 F.3d 1236, 1240 (7th Cir. 1993) ("The statute of limitations starts to run when the plaintiff's cause of action accrues, and in Illinois it accrues not when the plaintiff is injured but when he discovers (or should have discovered) that he has been injured.") (citing *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416, 430 N.E.2d 976, 979–80 (1981)).

In the Report and Recommendation, the magistrate judge concluded that Romero had actual notice of his injury on February 1, 2006 because that is when he learned that the government "retracted the settlement agreement." Report & Recommendation 6. This fact, however, appears nowhere in the TPC; instead, the magistrate judge determined that Romero was bound by his statements in his Counterclaim against the United States regarding whether, and when, he learned that the United States still sought to collect the full amount of his loans.

As a general rule, "a party is bound by what it states in its pleading." *Soo Line R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997). "Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them." *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir.1995). This rule, however, is not absolute. In a third-party situation, pleadings in one suit are not binding judicial admissions in the other. *Enquip, Inc. v. Smith-McDonald Corp.*, 655 F.2d 115, 118 (7th Cir. 1981). *See also Slate Printing Co. v. Metro Envelope Co.*, 532 F. Supp. 431, 436 (N.D. Ill. 1982). In other words, "a judicial admission binds only in the litigation in which it is made." *Higgins v. Mississippi*, 217 F.3d 951, 954 (7th Cir. 2000). *Enquip, Inc.* distinguished a judicial admission from an evidentiary admission in noting that the evidence, while "admissible," was not a conclusive judicial admission. 655 F.2d at 118.

Here, Romero's Counterclaim against the United States alleged: "On February 1, 2006, United States of America retracted the settlement agreement it entered into with Robert M. Romero," and, "On February 2, 2006, United States of America returned the $5,191.30 check received from Robert M. Romero." Countercl. ¶¶ 10-11. While these statements were binding on Romero in his litigation against the United States, they do not constitute judicial admissions in

this third party suit against ConServ.[2] In his complaint against ConServ, Romero does not state when he first discovered that the settlement was not genuine or that the United States did not agree to it. In his Response to ConServ's Motion to Dismiss, Romero now states that he first "discovered the injury on September 30, 2014," and that "he has no knowledge or information of whether or when the check was returned." Resp. in Opp'n to Mot. to Dismiss, 7-8, ECF No. 80. This kind of "[f]illing in the blanks" from the original complaint when responding to a motion to dismiss is permitted as long as the added facts do not contradict anything in the complaint. *Help At Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) ("A plaintiff need not put all of the essential facts in the complaint; he may add them by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint"). Since the TPC was silent as to when the injury was discovered, the date of discovery alleged in Romero's response brief is not inconsistent with his original pleading against Conserv.

Conserv does not raise this issue, but it is also worth noting that Romero's arguably inconsistent allegations in the two cases are not inherently problematic. "[T]here's no rule against inconsistent pleadings in different suits, or for that matter a single suit." *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 597 (7th Cir. 2012). When a party makes inconsistent pleadings, "[n]either allegation has priority." *Moriarty v. Larry G. Lewis Funeral Directors Ltd.*, 150 F.3d 773, 777 (7th Cir. 1998). Romero pleaded against ConServ that he had no knowledge of his injury until 2014, which is arguably inconsistent with his pleading that the Government repudiated the agreement and returned his check in 2006. To the extent Romero lacked a basis

---

[2] They are, however, admissible evidence in this suit. *Enquip, Inc.* 655 F.2d at 118. The Court notes, however, that the statements, even if they were binding admissions, do not actually state that Romero knew in 2006 that the United States had returned the check, or that he received the check, so the statements would not be conclusive as to when the statute of limitations began to run in any event.

8

for the factual assertion in either pleading, it might be a matter for Rule 11(b)(3), *see Am. Transp. Grp. LLC v. California Cartage Co., LLC*, 168 F. Supp. 3d 1074 n.5 (N.D. Ill. 2016); or perhaps the doctrines of judicial estoppel or issue preclusion will come into play, but the inconsistency in itself does not implicate the viability of either pleading.

Because the allegations in Romero's Counterclaim against the United States are not binding on him as to his Third Party Complaint against ConServ—drawing all favorable inferences for Romero as the non-moving party—this Court cannot find based on the pleadings alone that Romero possessed sufficient information regarding his injury on February 1, 2006. Therefore, the pleadings themselves do not set forth everything necessary to satisfy the affirmative defense of the statute of limitations, and the motion to dismiss cannot be granted based on noncompliance with the statute of limitations.[3]

## III.   Merits

Accordingly, Conserv's arguments on the merits must also be addressed.[4] In his third party-complaint, Romero labels his claims "breach of implied warranty" (Count I) and "promissory estoppel" (Count II), although these labels are not binding. A plaintiff need not plead any legal theories in a complaint, *see Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 783 (7th Cir. 2015); he must merely set forth sufficient facts from which a plausible claim for relief under a recognized legal theory, *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Disregarding this principle, Conserv seeks dismissal based on Romero's purported failure

---

[3] Of course, the suit is untimely if proof can be adduced that Romero had knowledge of the repudiation or learned of Conserv's lack of authority more than five years before filing suit. For example, Conserv has suggested that it immediately revoked the settlement offer due to a typographical error. See Mem. 4, ECF No. 68. Such evidence would severely undermine the viability of Romero's suit.

[4] It would be inefficient to send these issues back to the magistrate judge for resolution, and therefore the Court addresses them here.

to plead all the elements of each "claim," by which it really means "count."[5] Of course, Romero has but one claim for relief (*i.e.*, one cause of action) against Conserv because he seeks relief based on the same set of underlying facts. *See Nilssen v. Motorola, Inc.*, 255 F.3d 410, 414 (7th Cir. 2001). One "claim" can be premised on multiple legal theories, but those theories need not be set forth in the complaint. *See N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) ("A complaint should limn the grievance and demand relief. It need not identify the law on which the claim rests, and different legal theories therefore do not multiply the number of claims for relief."); *see also Camasta*, 761 F.3d at 736. "One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate." *NAACP*, 978 F.3d at 292 (7th Cir. 1992). "Making legal arguments in support of one's claim comes after the pleadings." *ACF 2006 Corp. v. Mark C. Ladendorf, Attorney at Law, P.C.*, 826 F.3d 976, 981 (7th Cir. 2016)

Here, Romero's grievance is that Conserv misrepresented to him that it could, and did, settle his student-loan debt for $5,191.30, when it lacked the authority to do so. This caused the subsequent non-payment of his student loans and, in turn, caused him to incur substantial interest and penalties; moreover, he relied upon the purported settlement of his loan balance for many years in conducting his financial affairs. Those assertions are taken as true. The only question is whether they are sufficient to survive the motion to dismiss. "The complaint need only contain a short and plain statement of the claim demonstrating entitlement to relief." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277–78 (7th Cir. 2016) (citing Fed.R.Civ.P. 8(a)(2)). "Although detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that

---

[5] Plaintiffs need not put each legal thoery in a separate count, and doing so anyway does not change the fact that they need only "narrate a plausible grievance" to survive a motion to dismiss. *Frank v. Walker*, 819 F.3d 384, 388 (7th Cir. 2016).

is plausible on its face.'" *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir.2010).

There are any number of legal theories under which Romero—again, taking his factual assertions as true—might obtain relief against Conserv. One, suggested by Romero, is promissory estoppel. Conserv argues—briefly—that as a matter of law, Romero's reliance on Conserv's promise was unreasonable. Br. 3-4, ECF No. 68. But this argument is premised on Romero's supposed admission in his lawsuit against the United States that he knew the government had repudiated the settlement. As already noted, it is not proper to hold this inconsistent factual assertion against Romero in his dispute with Conserv; if the repudiation occurred, Conserv presumably will be able to establish that fact on summary judgment.

Conserv also dismisses Romero's theory of breach of implied warranty of authority, arguing Romero had a duty as a matter of law to ascertain whether Conserv had the authority to bind the government and failed to do so. Br. 6-8, ECF No 68. The duty of inquiry—to the extent any binding authority, of which Conserv cites none, requires the application of the doctrine here—is, in this case, a fact-based defense that the Court cannot resolve on the pleadings. Whether or not Romero should have taken steps to ascertain Conserv's authority before acting on the settlement Conserv offered him, he was not required to plead facts negating this argument in his TPC.

Finally, there are the obvious theories of fraudulent or negligent misrepresentation that might apply to Romero's claims. Under Illinois law, fraudulent misrepresentation occurs when a party makes a false statement of material fact that is known or believed to be false by the party making it, with the intent to induce the other party to act, and the other party acts in justifiable

reliance on the truth of the statement, resulting in damage.[6] *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 193, 538 N.E.2d 530, 536 (1989); *Charles Hester Enterprises, Inc. v. Illinois Founders Ins. Co.*, 114 Ill. 2d 278, 288, 499 N.E.2d 1319, 1323 (1986). This is "a very narrow tort that applies only to cases involving business or financial transactions between parties," a qualification met here. *See Bonhomme v. St. James*, 2012 IL 112393, ¶ 35, 970 N.E.2d 1, 10 (Ill. 2012). A claim for negligent misrepresentation "has essentially the same elements as fraudulent misrepresentation, except that . . . . [a] plaintiff need only allege that the defendant was careless or negligent in ascertaining the truth of the statement, and that the defendant had a duty to convey accurate information to the plaintiff." *Jane Doe-3 v. McLean Cty. Unit Dist. No. 5 Bd. of Directors*, 2012 IL 112479, ¶ 28, 973 N.E.2d 880, 889 (Ill. 2012).

Based on the facts in Romero's third-party complaint, taken as true, this Court cannot conclude as a matter of law that he states no claim for relief that is plausible on its face. The motion to dismiss is, therefore, denied.

Date: September 28, 2016

John J. Tharp, Jr.
United States District Judge

---

[6] Rule 9 requires heightened pleading of fraud claims, but here, there is no question from the pleadings that Romero's third party complaint with its exhibits (including the settlement offer) has set forth the who, what, when, where, and how of the alleged misrepresentation. *See generally Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012).